# IN THE UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF ARIZONA

| | |
|---|---|
| Mendota Insurance Company, | No. CV-16-03375-PHX-JJT |
| Plaintiff, | **ORDER** |
| v. | |
| Shirley Snage, *et al.*, | |
| Defendants. | |

At issue is Plaintiff and Counterdefendant Mendota Insurance Company's ("Mendota") Motion for Summary Judgment (Doc. 102, Plaintiff's Motion for Summary Judgment "Pl's MSJ"), to which Defendant and Counterclaimant Shirley Snage filed a Response and Cross-Motion for Summary Judgment (Doc. 108, Defendant's Motion for Summary Judgment "Def's MSJ"). Mendota subsequently filed a Response to Snage's Cross-Motion and a Reply in support of its own Motion (Doc. 110, Pl's Resp.), to which Snage filed a Reply (Doc. 117, Def's Reply). Also at issue is Mendota's Motion for Leave to File Sur-Reply (Doc. 118). The Court finds the motions appropriate for resolution without oral argument. *See* L.R.Civ 7.2(f). For the reasons that follow, the Court denies Mendota's Motion for Summary Judgment (Doc. 102) and grants Snage's Cross-Motion for Summary Judgment (Doc. 108). The Court additionally denies as moot Mendota's Motion for Leave to File Sur-Reply.

## I. BACKGROUND

On June 17, 2016, Shirley Snage was involved in a car accident while driving her 2012 Hyundai Genesis near Scottsdale Road and Dynamite Road in Scottsdale, Arizona. (Doc. 103, Statement of Stipulated Facts "SSOF" ¶ 12.) Nearly three years earlier, Snage took out a motor vehicle insurance policy from Mendota through her insurance agency, BCH Marketing, Inc.[1] (Doc. 104-4, Mendota's Separate Statement of Facts "Mendota SOF" Ex. 4, Hutching Decl. ¶ 6.) Snage maintained the policy with Mendota over the next few years. When Snage purchased her Genesis in June 2015, she arranged to add the new car to her policy with Mendota. In September of that year, Snage renewed the policy with Mendota. (Doc. 104-1, Mendota SOF Ex. 1, Mason Decl. ¶ 8.) That policy (the "Mendota Policy") was to provide coverage beginning September 3, 2015, and running through September 3, 2016. (Mendota SOF Ex. 1, Mason Decl. ¶ 8.) The Mendota Policy required the payment of a monthly premium, which Snage arranged to pay by a recurring, automatic charge to her BBVA Compass Bank debit card. (SSOF ¶ 5.) Snage timely paid her premium this way over the next nine months. In May 2016, however, BBVA issued an updated debit card to Snage. (SSOF ¶ 5.) Although the replacement card's account number was identical to the card on file with Mendota, the expiration dates differed. (SSOF ¶ 7.) BBVA activated the replacement card on May 17, 2016, effectively cancelling Snage's previous debit card. (SSOF ¶ 8.) At this time, the debit card information on file with Mendota was not updated. (SSOF ¶ 10.)

On May 20, 2016, Mendota sent a Premium Notice to Snage requesting $154.02 for her June premium and listing June 3, 2016, as the due date for payment. (Doc. 104-7, Mendota SOF Ex. 7, Premium Notice.) Mendota subsequently attempted to charge the debit card on file on June 3; however, BBVA rejected the payment due to "Card Expiration Date Error." (Mendota SOF Ex. 1, Mason Decl. ¶¶ 13–14, Doc. 104-8, Mendota SOF Ex. 8, Transaction Receipt.) Three days later, on June 6, Mendota prepared

---

[1] Snage has filed a third-party Complaint against BCH in the present action. The pending motions, however, do not pertain to those claims.

a document entitled "Notice of Cancellation for Nonpayment of Premium" to inform Snage that her June premium payment failed to process. (Mendota SOF Ex. 1, Mason Decl. ¶ 13–14.) The notice read as follows:

> EFFECTIVE DATE OF CANCELLATION 12:01 A.M. JUNE 15, 2016
>
> We wish to inform you that your policy designated above is canceled in accordance with its term as of the effective date of cancellation indicated above, and at the hour on which the policy became effective. Any premium adjustment required by the policy will be made.
>
> REASON(S) FOR CANCELLATION: INFUFFICIENT FUND CHECK CANCEL DUE TO CREDIT CARD PAYMENT $154.02 DECLINED. TO REINSTATE COVERAGE, PAYMENT OF $154.02 PLUS A $25.00 FEE MUST BE MADE PRIOR TO THE CANCELLATION EFFECTIVE DATE.

(Doc. 104-9, Mendota SOF Ex. 9, Mendota Notice at 2.) Prior to her car accident on June 17, 2016, Snage did not make a payment to Mendota to fulfill her June premium. Mendota, however, mailed no further notice to Snage following the notice mailed to Snage on June 8, 2016.

Mendota subsequently filed suit in this Court against Snage, as well as several additional individual and corporate defendants, for a declaratory judgment that Mendota has no duty to defend or indemnify Snage for any claims resulting from her accident on June 17, 2016. (Doc. 46, Am. Compl. ¶¶ 29–34.) Snage subsequently filed two counterclaims against Mendota. (Doc. 47, Am. Answer & Countercl.) First, Snage seeks a declaratory judgment that the Mendota Policy was in effect on June 17, 2016, and that Mendota is required to defend and indemnify Snage for any claims stemming from her accident on that date. (Am. Answer & Countercl. at 6–7.) Additionally, Snage brings a claim of bad faith against Mendota for its attempt to deliver a notice of cancellation prior to the conclusion of the statutory grace period. (Doc. 47, Am. Answer & Countercl. at 8.)

## II. LEGAL STANDARD

Under Rule 56(c) of the Federal Rules of Civil Procedure, summary judgment is appropriate when: (1) the movant shows that there is no genuine dispute as to any material fact; and (2) after viewing the evidence most favorably to the non-moving party,

the movant is entitled to prevail as a matter of law. Fed. R. Civ. P. 56; *Celotex Corp. v. Catrett*, 477 U.S. 317, 322-23 (1986); *Eisenberg v. Ins. Co. of N. Am.*, 815 F.2d 1285, 1288-89 (9th Cir. 1987). Under this standard, "[o]nly disputes over facts that might affect the outcome of the suit under governing [substantive] law will properly preclude the entry of summary judgment." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). A "genuine issue" of material fact arises only "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Id.*

In considering a motion for summary judgment, the court must regard as true the non-moving party's evidence, if it is supported by affidavits or other evidentiary material. *Celotex*, 477 U.S. at 324; *Eisenberg*, 815 F.2d at 1289. However, the non-moving party may not merely rest on its pleadings; it must produce some significant probative evidence tending to contradict the moving party's allegations, thereby creating a material question of fact. *Anderson*, 477 U.S. at 256-57 (holding that the plaintiff must present affirmative evidence in order to defeat a properly supported motion for summary judgment); *First Nat'l Bank of Ariz. v. Cities Serv. Co.*, 391 U.S. 253, 289 (1968).

"A summary judgment motion cannot be defeated by relying solely on conclusory allegations unsupported by factual data." *Taylor v. List*, 880 F.2d 1040, 1045 (9th Cir. 1989). "Summary judgment must be entered 'against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." *United States v. Carter*, 906 F.2d 1375, 1376 (9th Cir. 1990) (quoting *Celotex*, 477 U.S. at 322).

### III. ANALYSIS

Mendota moves for summary judgment on its Complaint as well as each of Snage's counterclaims. Snage, in turn, moves for summary judgment on Mendota's Complaint and Count I of her counterclaims. Because the claim found in Mendota's Complaint and Count I of Snage's Counterclaim encompass the same legal question, the Court addresses the Motions on those claims together before moving to Mendota's arguments regarding Snage's remaining counterclaim.

## A. Declaratory Judgment Actions

Mendota and Snage each assert that they are entitled to summary judgment on the declaratory judgment claims found in Mendota's Complaint and in Count I of Snage's Counterclaim. Each of these claims seeks an opposing declaratory judgment stemming from the same question: does Mendota have a duty to defend or indemnify Snage for any claims resulting from her accident on June 17, 2017? (*See* Am. Compl. ¶¶ 29–34; Am. Answer & Countercl. at 6–7.) Mendota argues that, although it issued an insurance policy to Snage, it cancelled that policy prior to any accident for Snage's failure to pay her monthly premium. (Pl's MSJ at 2.) Thus, it has no duty to defend or indemnify Snage for any event occurring after said cancellation. Snage, however, argues that Mendota's attempt to cancel the policy was invalid under Arizona law. (Def's MSJ at 3–4.) As such, Snage asserts that the policy remained in force at the time of her accident binding Mendota to its terms and provisions.

### 1. Arizona Revised Statute § 20-1632.01

Arizona law limits an insurer's ability to cancel motor vehicle insurance because of the policyholder's failure to pay her insurance premium. *See* A.R.S. § 20-1632.01. One such limitation requires that Arizona motor vehicle insurance policies contain "a provision that the policyholder is entitled to a minimum grace period of seven days for the payment of any premium due except the first payment, during which grace period the policy shall continue in full force." A.R.S § 20-1632.01(A). The statute further defines "grace period" as "the period of time after the premium due date during which the policy remains in force without penalty even though the premium due has not been paid." A.R.S § 20-1632.01(D). Finally, the statute provides that "[f]or any motor vehicle policy cancelled or nonrenewed for nonpayment of premium by the insurer after the grace period, the insurer must mail a notice of cancellation or nonrenewal to the policyholder." A.R.S. § 20-1632.01(B). "[C]ancellation . . . is effective on the date the notice is mailed to the policy holder," and "[t]he notice shall include or be accompanied by a statement in writing of the reasons for such action by the insurer." *Id.*

For cancellation to be effective, an insurer must strictly comply with the provisions set forth by statute. *See Norman v. State Farm Mut. Auto. Ins. Co.*, 33 P.3d 530, 535 (Ariz. 2001). As such, the Mendota Policy largely tracks these requirements, providing that:

> If cancellation is for nonpayment of premium, other than for the first down-payment of the first policy period, a grace period will apply. If the payment due is not made before the end of the grace period, a cancellation notice will [be] sent and will take effect as of the date the cancellation notice is mailed.

(Mendota SOF Ex. 5, Mendota Policy at 29.) Additionally, the Mendota policy limits the permissible reasons for cancellation, including nonpayment of premium, which tracks restrictions set by Arizona law. (Mendota SOF Ex. 5, Mendota Policy at 29; *see* A.R.S. § 20-1631(D).) Such nonpayment occurs under the policy when the insured "fail[s] to pay, when due, any: premium; additional premium; or premium installment." (Mendota SOF Ex. 5, Mendota Policy at 30.)

The pertinent facts are not in dispute for the purpose of the Motions for Summary Judgment. In September 2015, Mendota issued a motor vehicle insurance policy to Snage for her 2012 Hyundai Genesis. (SSOF ¶ 1.) The policy was set to run from September 3, 2015 through September 3, 2016, with premium payments to be paid monthly by an automatic charge to Snage's debit card. (SSOF ¶¶ 1, 5.) On May 20, 2016, Mendota mailed Snage a Premium Notice stating that her next monthly premium was due on June 3, 2016. On June 3, Mendota attempted to charge the debit card associated with Snage's account, but the payment failed because the bank declined the card listed in Snage's account. (SSOF ¶¶ 10–11.) This commenced the seven day grace period required by Arizona law and the Mendota Policy. On June 8, prior to the expiration of the grace period, Mendota mailed a "notice" to Snage stating that cancellation of the policy would take effect on June 15, 2016. (Mendota SOF Ex. 9, Mendota Notice.) The notice listed the reason for cancellation as the declined credit card payment. (Mendota SOF Ex. 9, Mendota Notice at 2.) At 12:01 A.M. on June 11, the seven day grace period expired.

Mendota, however, did not mail any additional notice to Snage on or after that date. On June 17, 2016, Snage was involved in a car accident while driving her 2012 Hyundai. (SSOF ¶ 12.)

Thus, the primary issue for resolution on summary judgment is pure question of law: whether, under Arizona law, a notice of cancellation sent during the statutory grace period complies with the notice provisions of A.R.S. § 20-1632.01. This is a question of first impression requiring interpretation of A.R.S. § 20-1632.01. Where the language of a statute is "clear and unambiguous," Arizona courts apply the plain meaning "without resorting to other methods of statutory interpretation." *Hayes v. Continental Ins. Co.*, 872 P.2d 668, 672 (Ariz. 1994). "Ambiguity exists if there is uncertainty about the meaning or interpretation of a statute's terms." *Id.* Courts, however, cannot read "word in statutes . . . in isolation from the context in which they are used." *J.D. v. Hegyi*, 335 P.3d 1118, 1120 (Ariz. 2014). When the text of the statute "'does not resolve the parties dispute' . . . [the Court] must 'attempt to glean and give effect to the legislature's intent, considering the statute's context, effects and consequences, and spirit and purpose.'" *Sell v. Gama*, 295 P.3d 421, 425 (Ariz. 2013) (quoting *Am. Family Mut. Ins. Co v. Sharp*, 277 P.3d 192, 195–96 (Ariz. 2012)).

In support of its Motion, Mendota presents a straightforward argument: because the statute does not expressly limit the timing of the notice of cancellation, an insurer may send its "notice" at any time, including during the grace period. (Pl's MSJ at 4–7.) Mendota points to the language found in § 20-1632.01(B), which contains the provision requiring that insurers mail a notice of cancellation. Mendota argues that § 20-1632.01(B) reads in two parts: the first defining when an insurer may cancel a motor vehicle insurance policy and the second requiring that the insurer provide the insurer with a notice of cancellation. (Pl's MSJ at 5.) This argument treats the two clauses as distinct, with the limiting phrase "after the grace period" applying only to the timing of cancellation. Thus, Mendota argues the statute does not limit the timing of the *notice* of cancellation, only the cancellation itself.

This argument is appealing when reading the first sentence of § 20-1632.01(B) in isolation. As Mendota correctly points out, this clause contains no express provision limiting the timing of the insurer's notice of cancellation. However, this alone does not resolve the issue, as Mendota reads this sentence in isolation from the statute as a whole and thus assumes the premise of its own argument: that the notice that it mailed was in fact a "notice of cancellation."

As § 20-1632.01(A) makes clear, the seven day grace period exists "for the payment of any premium." This demonstrates the legislature did not intend simply to provide the insured with seven additional days of coverage prior to cancellation. Rather, the grace period evinces the legislature's intent to give the insured seven additional days after the premium "due date" during which she may pay her premium and keep her policy in force without fear of cancellation. If the insured pays her premium during this seven day period, the insurer may not cancel the policy for nonpayment of premium. The language of the Mendota Policy—which Mendota argues "tracks the[] statutory requirements" (*see* Pl's MSJ at 3)—supports this conclusion, permitting cancellation for nonpayment only "[i]f the payment due is not made before the end of the grace period." (*See* Mendota Ex. 5, Mendota Policy at 29.) Indeed, Mendota at no point argues that an insurer has the right to terminate a motor vehicle policy for non-payment of premium if the insured makes his premium payment during the seven day grace period, nor does the Court find support in the text of § 20-1632.01, in Arizona case law, or in the terms of the Mendota Policy itself for that proposition. Thus, under both the statute and the Mendota Policy, the insurer's right to cancel for nonpayment only arises after the grace period expires.

This informs the Court's ultimate conclusion: that under § 20-1632.01 an insurer cannot issue a notice of cancellation until it has grounds to cancel the policy, and that an insurer does not have grounds to cancel an insured's policy for nonpayment until the grace period expires. Thus, under Arizona law, an insurer's "notice of cancellation" is not valid unless sent after the grace period. The surrounding text of the statute provides

additional support for this conclusion. For example, the statute provides that any notice of cancellation "shall include . . . a statement in writing of the reasons for such action by the insurer." § 20-1632.01(B). Because nonpayment does not occur until the grace period concludes, it follows that the insurer has no such reason for cancellation for nonpayment until that time. Thus, a "notice" sent during the grace period necessarily cannot contain any final "reason[] for such action." Before the grace period expires, the insurer's "reason" is merely its anticipation that the insured will not pay, not the insured's actual failure to pay. As such, any "notice" sent during the grace period cannot be a "notice of cancellation" within the statute's terms.

The statute further provides that "cancellation . . . is effective on the date the notice is mailed to the policyholder." § 20-1632.01(B). Snage argues that this phrase would render the statute internally inconsistent if the statute also permitted the insurers to mail a "notice of cancellation" prior to the grace period's expiration. (Def's MSJ at 4.) Mendota counters that the clause merely "permits, but does not require, the insurer to cancel the policy upon mailing." (Pl's MSJ at 8.) Thus, Mendota contends that the clause does not prohibit a reading of the statute that would allow the insurer to comply with its notice provisions by mailing its notice during the grace period. (Pl's MSJ at 8.)

Mendota's argument relies on the Arizona Supreme Court's holding in *Norman v. State Farm Mutual Automobile Insurance Co.*, 33 P.3d 530 (Ariz. 2001). In *Norman*, the court considered the validity of an insurer's notice of cancellation, which deferred cancellation of a policy beyond the date on which the insurer mailed the notice. There, the insurance company canceled the policy of its insured after the insured tendered a bad check to cover his premium payment. After statutory grace period passed, the insurer mailed a cancellation notice for nonpayment of premium. *Id.* at 533. That notice, however, stated that cancellation would occur thirteen days after the date on which the insurer mailed the notice. *Id.* Two days after the stated cancellation date, the insured wrecked his car in an accident. When the insurer refused to cover the loss, the insured brought suit to enforce the policy, arguing that the insurer failed to strictly comply with

1 | A.R.S. § 20-1632.01 by deferring cancellation beyond the date notice was mailed. *Id.* at
2 | 533–34.

3 | The Arizona Supreme Court rejected the insured's position, holding that the statute permitted, but did not require, cancellation to take effect upon mailing. *Id.* at 535. The court further stressed that the insured's reading of the statute would have the "absurd consequence[]" of prohibiting advance notice of cancellation, which the court determined would be contrary to legislative intent. *Id.* at 534. Thus, *Norman* stands for the proposition that § 20-1632.01 permits insurers "to send a notice of cancellation that cancels the policy at a date later than the date of mailing, so long as the notice clearly and unequivocally expresses the insurance company's intention to cancel." *Id.* In effect, *Norman* articulates that § 20-1632.01 sets forth a baseline rule that notices of cancellation for nonpayment of premium shall take effect upon mailing, but that the rule of strict compliance does not preclude insurers from deferring cancellation beyond the date of mailing. *See id.*

*Norman*'s holding, however, does not support Mendota's reading of the statute here, which would permit an insurer to mail the "notice of cancellation" at any time, including during the grace period when the insurer has no right to cancel. Such a reading renders even the statute's baseline rule nonsensical because it creates a category of notices to which the baseline rule *cannot* apply. As the *Norman* court stated, the language of the statute "does not preclude an interpretation that permits an insurance company *to forego the right to cancel upon mailing* and instead send an advance notice that extends cancellation to a later date." *Norman*, 33 P.3d at 535. But, by sending a notice during the grace period, Mendota does not *forego* any right afforded to it under the statute; Mendota had no right to cancel at that time. Thus, the rationale of *Norman* supports this Court's determination that the notice of cancellation necessarily must be sent after the grace period concludes.

Although Mendota predicts that Snage's interpretation of § 20-1632.01, which this Court now adopts, would "preclude[] an insurer from providing pre-cancellation notice

and the opportunity to prevent cancellation," (Pl's MSJ at 7), that is not the case. The statute in no way limits an insurer's ability to inform its customers about the impending possibility of cancellation; that decision is left to the insurer. But, a "pre-cancellation notice"—as Mendota repeatedly refers to it (*see, e.g.*, Pl's MSJ at 5, 7)—is not a notice of cancellation by the terms of the statute.

In this instance, Mendota mailed its purported "notice" to Snage two days before the expiration of Snage's grace period for payment. (Mendota SOF Ex. 9, Mendota Notice.) At that time, Mendota had no grounds for cancellation because Snage had not yet failed to pay her premium. Thus, the notice mailed to Snage on June 8, 2017, was not a notice of cancellation by the terms of the statute. Additionally, Mendota presents no evidence to show that, after the grace period expired, Mendota mailed an additional notice to Snage in accordance with the terms of A.R.S. § 20-1632.01. Because Mendota failed to mail such notice, it failed to strictly comply with the statute's provisions for cancelling the policy for nonpayment of premium. Thus, Mendota's attempt at cancellation was ineffective and the policy was in effect at the time of Snage's accident. *See Norman*, 33 P.3d at 535. Mendota additionally presents no evidence tending to show that, assuming it failed to cancel the policy, it was under no obligation to defend and indemnify Snage for her accident on June 17, 2016. For that reason, the Court grants Snage's Motion for Summary Judgment and denies Mendota's Motion for Summary Judgment with respect to its Complaint and Count I of Snage's Counterclaim.

### B. Snage's Bad Faith Claim

Mendota additionally moves for summary judgment on Snage's claim of bad-faith, arguing that Snage's claim fails because she cannot establish the existence of a contract between the parties on June 17, 2016. (Pl's MSJ at 10.) This argument is premised on Plaintiff's arguments as to the other counts at issue, which the Court has now rejected. Thus, having determined that Mendota failed to cancel its contract with Snage prior to the date of Snage's accident, Mendota's arguments as to Snage's bad-faith claim fail. Accordingly, the Court denies Mendota's Motion as to Count II of Snage's Counterclaim.

### C. Mendota's Motion to File a Sur-Reply

Finally, Mendota moves to file a Sur-Reply in response to arguments raised by Snage in her Reply. (Doc. 118.) Although Snage does raise certain arguments for the first time in her Reply, these arguments are irrelevant to the Court's resolution of the current motion and are disregarded. Thus, the sur-reply has become unnecessary, and the Court denies Mendota's Motion.

## IV. CONCLUSION

Regarding the declaratory judgment claims in both Plaintiff's Complaint and Count I of Defendant's Counterclaim, Mendota fails to establish a genuine dispute of material fact. Under the terms of A.R.S. § 20-1632.01, a notice of cancellation is valid only when mailed after the seven day grace period for the insured to pay his premium has expired. In this case, Mendota failed to cancel Snage's policy because it prematurely mailed its notice of cancellation.

Further, regarding the bad faith claim found in Count II of Snage's Counterclaim, a genuine dispute of material fact remains. Accordingly, Snage's claim shall proceed to trial.

**IT IS ORDERED** denying Plaintiff and Counterdefendant Mendota Insurance Company's Motion for Summary Judgment (Doc. 102).

**IT IS FURTHER ORDERED** granting Defendant and Counterclaimant Shirley Snage's Motion for Summary Judgment (Doc. 108). Plaintiff's Complaint is dismissed from this matter. Count II of Defendant's Counterclaim shall proceed to trial.

**IT IS FURTHER ORDERED** denying as moot Plaintiff's Motion for Leave to File Sur-Reply (Doc. 118).

Dated this 19th day of January, 2018.

Honorable John J. Tuchi
United States District Judge